**CV 07 2720**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

NEW YORK ISLANDERS HOCKEY CLUB, L.P.

                      Plaintiff,

-against-

HAVOC DISTRIBUTION, INC.

                      Defendant.

-----------------------------------------------------------x

**COMPLAINT**

Civil No.:

**BIANCO, J.**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 05 2007 ★
BROOKLYN OFFICE

New York Islanders Hockey Club, L.P., by its attorneys, Guararra & Zaitz, alleges as its complaint as follows:

**PARTIES**     WALL, M.J.

1. Plaintiff New York Islanders Hockey Club, L.P. (the "Islanders") is a limited partnership formed under the laws of the State of New York, whose principal place of business is located at 1535 Old Country Road, Plainview, New York 11803.

2. Upon information and belief, defendant Havoc Distribution, Inc. ("Havoc") is a corporation organized under the laws of the state of Texas with its principal place of business located at 2544 Tarpley Road, Carrolton, Texas 75006.

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to the claims made in this action occurred in this District and because defendant Havoc consented in writing to venue in this District.

## FACTUAL ALLEGATIONS

5. The Islanders own and operate a National Hockey League franchise whose team (the "Team") plays its home games at the Nassau Veterans Memorial Coliseum (the "Coliseum").

6. Upon information and belief, Havoc is a distributor of among other things, energy drinks.

7. On November 1, 2006 the Islanders and Havoc entered into an agreement (the "Sponsorship Agreement") pursuant to which the Islanders granted Havoc certain advertising and sponsorship rights, to promote itself and its energy drink (the "Acquired Rights").

8. The term of the Sponsorship Agreement was November 1, 2006 through June 30, 2009 and covered each of the Team's three National Hockey League Seasons to take place during that period.

9. The Acquired Rights included, but were not limited to:

- the placement of Havoc's logo at center ice for the Team's home games at the Coliseum;

- signage space at the Coliseum;

- advertising space in the Team's program sold at the Team's home games;

- live and pre-recorded in-game promotion of Havoc, and its energy drink, during the Team's home games via the Coliseum message boards and public address system;

  o  radio advertising time during the radio broadcasts of the Team's games;

  o  the right to place advertising copy on the Team's official web-site;

  o  the right to represent to the public that Havoc's energy drink is the "Official Energy Drink of the New York Islanders" and the right to use the Team's logo on certain of Havoc's marketing material and packaging, subject to the prior approval of the Islanders.

10. Pursuant to the Sponsorship Agreement, in consideration for the granting of the Acquired Rights to Havoc by the Islanders for the term of the Sponsorship Agreement, Havoc agreed to pay $805,000.00 to the Islanders ("Base Sponsorship Fees"), plus an additional $5,000.00 for each home playoff game to be played by the Team during the term of the Sponsorship Agreement, plus any costs incurred by the Islanders in their producing advertising copy used by Havoc in connection with the Sponsorship Agreement.

11. The Base Sponsorship Fees were due to be paid by Havoc to the Islanders, as set forth in the Sponsorship Agreement, as follows:

| Date | Amount |
|---|---|
| February 5, 2007 | $90,000.00 |
| March 5, 2007 | $90,000.00 |
| April 5, 2007 | $85,000.00 |
| October 1, 2007 | $53,000.00 |
| November 1, 2007 | $53,000.00 |
| December 1, 2007 | $53,000.00 |
| January 1, 2008 | $53,000.00 |
| February 1, 2008 | $53,000.00 |
| October 1, 2008 | $55,000.00 |
| November 1, 2008 | $55,000.00 |
| December 1, 2008 | $55,000.00 |
| January 1, 2009 | $55,000.00 |
| February 1, 2009 | $55,000.00 |

12. In accordance with their obligations under the Sponsorship Agreement, the Islanders, throughout the Team's 2006-2007 regular season, afforded Havoc substantially all of Havoc's Acquired Rights under the Sponsorship Agreement by, among other things:

- placing Havoc's logo at center ice for all of the Team's home games;
- allotting Havoc the requisite signage space at the Coliseum;
- allotting Havoc the requisite advertising space in the Team's program;
- allotting Havoc the requisite live in-game promotion;
- allotting Havoc the requisite radio advertising time during the radio broadcasts of the Team's games;
- permitting Havoc to represent to the public that Havoc's energy drink is the "Official Energy Drink of the New York Islanders" and permitting it to use the Team's logo on those containers of Havoc's energy drink that were sold at the Team's home games.

13. The Islanders were unable to provide Havoc with certain pre-recorded in-game promotion on the Coliseum Jumbotron and certain promotion on the Team's official web-site because Havoc failed to provide any advertising copy to the Islanders for these media.

14. At no time did Havoc notify the Islanders that as a result of such inability that the Islanders were not in compliance with the Sponsorship Agreement.

15. Havoc did, however, notify the islanders that Havoc did not desire the merchandise specified in Section C of Exhibit 1 of the Sponsorship Agreement and, accordingly, the Islanders did not send such merchandise to Havoc.

16. In addition to the Acquired Rights, the Islanders conferred upon Havoc additional live in-game promotion, not set forth in the Sponsorship Agreement, such as the creation of a

"Havoc Zone" at the Coliseum during the Team's home games during the 2006-2007 season and by spotlighting the "Havoc Zone" during those games.

17. The Islanders, in affording Havoc the Acquired Rights, also incurred production costs in the amount of $4,147.69.

18. Other than an initial payment by Havoc to the Islanders in the amount of $10,000.00, made in February 2007, Havoc failed to make any payments to the Islanders as required by the Sponsorship Agreement.

19. In accordance with the Sponsorship Agreement, by letter dated April 24, 2007, of Jaimie Wolf, Assistant General Counsel for the Islanders, sent via certified mail to Havoc and to Sports Media, Inc, as is required by the Sponsorship Agreement, the Islanders demanded that Havoc make all payments due the Islanders under the Sponsorship Agreement within five days of the date that letter and notified Havoc that if it failed to do so, among other things, the Sponsorship Agreement would be terminated.

20. The Sponsorship Agreement provided also that in the event that Havoc failed to make any payment required thereunder, the Islanders had the right to terminate the Sponsorship Agreement, if, after five days from the Islanders sending written notice to Havoc of such failure to pay, and demanding same, Havoc still failed to make such payment.

21. Havoc failed to make any payments to the Islanders subsequent to that letter.

22. The Islanders terminated the Sponsorship Agreement by letter of counsel dated June 13, 2007, sent via certified mail to Havoc and to Sports Media, Inc.

23. Islanders also notified Havoc, by that same letter of June 13, 2007, that any rights that Havoc may have had under the Sponsorship Agreement were also accordingly terminated.

24. This notwithstanding, there currently exists, on Havoc's website, located at

http://www.havocenergy.com, a hyperlink to an internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders."

25. Pursuant to the Sponsorship Agreement, each of the parties consented to the jurisdiction of the state and federal courts located in Nassau and Suffolk counties in New York.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 as if each were more fully set forth herein.

27. The Sponsorship Agreement is a valid and binding contract between Havoc and the Islanders.

28. Havoc's failure to pay the Base Sponsorship Fees required by the Sponsorship Agreement, despite due demand by the Islanders to Havoc for it to do so, constitutes a breach of the Sponsorship Agreement by Havoc.

29. Havoc has also failed to pay the production costs incurred by the Islanders pursuant to the Sponsorship Agreement in the amount of $4,147.69, which failure also constitutes a breach of the Sponsorship Agreement by Havoc.

30. Havoc's failure to remove the hyperlink on Havoc's website, located at http://www.havocenergy.com, to the internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders" also constitutes a breach of the Sponsorship Agreement.

31. The Islanders have been damaged as a result of such breaches.

32. The Islanders accordingly demand judgment as a result of such breach in an amount to be determined at trial, but which amount includes, at least, all the unpaid Base Sponsorship Fees required by the Sponsorship Agreement, $795,000.00, plus the production costs incurred by the Islanders pursuant to the Sponsorship Agreement, $4,147.69, which amounts total, $799,147.69, plus pre-judgment interest at the rate set forth in the Sponsorship Agreement, and reasonable attorneys' fees.

33. The Islanders also demand judgment declaring that all of Havoc's rights under the Sponsorship Agreement are terminated.

34. The Islanders also demand judgment directing Havoc to remove the hyperlink on Havoc's website, located at http://www.havocenergy.com, to the internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders" and permanently enjoining it from utilizing any intellectual property of the Islanders that would have been within the scope of the Acquired Rights had the Sponsorship Agreement not been terminated.

### SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

35. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if each were more fully set forth herein.

36. Havoc was afforded all of the Acquired Rights under the Sponsorship Agreement by the Islanders.

37. Havoc accordingly had a benefit conferred upon it by the Islanders.

38. Havoc failed to fully pay the Islanders for such benefit.

39. Havoc has been unjustly enriched as a result.

40. The Islanders accordingly demand judgment in an amount to be determined at trial sufficient to compensate the Islanders for such conferred benefit, plus pre-judgment interest and reasonable attorneys' fees.

WHEREFORE, Plaintiff demands judgment against the defendant as follows:

1) on the First Claim for Relief:

    a) in an amount to be determined at trial, but which amount is at least $799,147.69, plus prejudgment interest at the rate set forth in the Sponsorship Agreement, and reasonable attorneys' fees;

    b) a declaration that Havoc's rights under the Sponsorship Agreement are terminated;

    c) directing Havoc to remove the hyperlink on Havoc's website, located at http://www.havocenergy.com, to the internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders" and permanently enjoining it from utilizing any intellectual property of the Islanders that would have been within the scope of the Acquired Rights had the Sponsorship Agreement not been terminated;

2) on the Second Claim for Relief, in an amount to be determined at trial, plus prejudgment interest and reasonable attorneys' fees;

3) and for such other and further relief as this Court deems proper, including costs and disbursements.

- 9 -

Dated:  New York, NY
       June 27, 2007

Respectfully submitted,

GUARARRA & ZAITZ

*/s/ Michael Zaitz*

by: Michael M. Zaitz (MZ3646)
100 Park Avenue, 20th Floor
New York, New York 10017
(212) 696-9193
Attorneys for Plaintiff
NEW YORK ISLANDERS
HOCKEY CLUB, L.P.