UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
NEW YORK ISLANDERS HOCKEY CLUB, L.P.                             :
                                                                 :
                                        Plaintiff,              :        **REQUEST TO**
                                                                 :        **ENTER DEFAULT**
                                                                 :
            -against-                                            :        Civil No.: CV-07-2720 (JFB)WDW
                                                                 :
                                                                 :
HAVOC DISTRIBUTION, INC.                                         :
                                                                 :
                                        Defendant.              :
-----------------------------------------------------------------x

TO:     ROBERT C. HEINEMANN, CLERK
        UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF NEW YORK

        Please enter the default of defendant(s), HAVOC DISTRIBUTION, INC., pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure for failure to plead or otherwise defend the

above-captioned action as it fully appears from the court file herein and from the attached

affidavit of Jaimie Wolf and the attached affirmation of Michael Zaitz.


Dated:  New York, New York                          Respectfully submitted,
        October 5, 2007
                                                    GUARARRA & ZAITZ

                                                    by: Michael M. Zaitz (MZ.3646)
                                                    100 Park Avenue, 20th Floor
                                                    New York, New York 10017
                                                    (212) 696-9193
                                                    Attorneys for Plaintiff
                                                    NEW YORK ISLANDERS
                                                    HOCKEY CLUB, L.P.

# AFFIDAVIT
# OF JAIMIE WOLF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                          :

NEW YORK ISLANDERS HOCKEY CLUB, L.P.       :

                                      Plaintiff,   :     **AFFIDAVIT IN SUPPORT**
                                                  :     **OF DEFAULT JUDGMENT**
                                                  :

          -against-                        :     Civil No. CV-07-2720 (JFB)WDW
                                                  :

HAVOC DISTRIBUTION, INC.                  :

                                      Defendant.  :
-------------------------------------------------------------------x

STATE OF NEW YORK       )
                       ) ss.:
COUNTY OF NASSAU       )

        JAIMIE WOLF, being duly sworn, deposes and says:

      1.      I am Assistant General Counsel for the New York Islanders Hockey Club, L.P. (the "Islanders") the plaintiff in the above entitled action, and I make this affidavit in support of the Islanders' motion for judgment by default pursuant to Fed. R. Civ. P. 55(a).  I make this affidavit based upon my personal knowledge of the facts alleged in the complaint in this action and those relevant to this motion.

      2.      The above-entitled action was brought by the Islanders against the defendant Havoc Distribution, Inc. ("Havoc") to recover amounts due the Islanders from Havoc under a Sponsorship Agreement dated November 1, 2006.  *A copy of the Sponsorship Agreement is annexed hereto as Exhibit A.*

      3.      The defendant is a corporation organized under the laws of the state of Texas whose principal place of business is located at 2544 Tarpley Road, Carrolton, Texas 75006;

accordingly defendant is not an infant or an incompetent nor is it presently in the military service of the United States.

4. The above-entitled action was commenced by the filing with the court of a summons and complaint in this action on July 5, 2007. *A copy of the summons and complaint is annexed hereto as Exhibit B.*

5. Service of the summons and complaint in this action was made on the defendant Havoc by the delivery of a true copy of the summons and complaint to its Chief Executive Officer, CK Williams, personally, on July 9, 2007. *A copy of the affidavit of service of the summons and complaint is annexed hereto as Exhibit C.*

6. The time for the defendant Havoc to answer or move with respect to the complaint was not extended, has now expired, and the defendant Havoc has not answered or moved with respect to the complaint.

7. The defendant Havoc is indebted to the plaintiff in the following manner.

8. Pursuant to the Sponsorship Agreement, Havoc agreed to pay, *inter alia*, the amount of $805,000.00 to the Islanders ("Base Sponsorship Fees") in consideration for certain rights granted by the Islanders to Havoc during each of the Islanders' three National Hockey League Seasons that would occur during the period November 1, 2006 through June 30, 2009 (the "Acquired Rights"), which rights included:

- o the placement of Havoc's logo at center ice for the Team's home games at the Coliseum;

- o signage space at the Coliseum;

- o advertising space in the Team's program sold at the Team's home games;

- o live and pre-recorded in-game promotion of Havoc, and its energy

drink, during the Team's home games via the Coliseum message boards and public address system;

o   radio advertising time during the radio broadcasts of the Team's games;

o   the right to place advertising copy on the Team's official web-site;

o   the right to represent to the public that Havoc's energy drink is the "Official Energy Drink of the New York Islanders" and the right to use the Team's logo on certain of Havoc's marketing material and packaging, subject to the prior approval of the Islanders,

9.      In accordance with the Islanders' obligations under the Sponsorship Agreement, the Islanders, throughout the Team's 2006-2007 regular season, afforded Havoc substantially all of Havoc's Acquired Rights under the Sponsorship Agreement.

10.     Other than an initial payment by Havoc to the Islanders in the amount of $10,000.00, made in February 2007, Havoc failed to make any Base Sponsorship Fee payments to the Islanders as required by the Sponsorship Agreement.

11.     In accordance with the Sponsorship Agreement, by my letter dated April 24, 2007, sent via certified mail to Havoc and to Sports Media, Inc, as is required by the Sponsorship Agreement, the Islanders demanded that Havoc make all payments due the Islanders under the Sponsorship Agreement within five days of the date that letter and notified Havoc that if it failed to do so, among other things, the Sponsorship Agreement would be terminated. *A copy of that letter is annexed hereto as Exhibit D.*

12.     At the time of my April 24, 2007 letter, Havoc was already in arrears under the Sponsorship Agreement in the amount of $255,000.00 in an Base Sponsorship Fee payments.

13.     The Sponsorship Agreement provided also that in the event that Havoc failed to make any payment required under the Sponsorship Agreement, the Islanders had the right to

terminate the Sponsorship Agreement, if, after five days from the Islanders sending written notice to Havoc of such failure to pay, and demanding same, Havoc still failed to make such payment.

14.    Havoc failed to make any payments to the Islanders subsequent to that letter.

15.    The Islanders terminated the Sponsorship Agreement by letter of the Islanders' counsel in this Action, dated June 13, 2007, which upon information and belief, was sent via certified mail to Havoc and to Sports Media, Inc. *A copy of that letter is annexed hereto as Exhibit D.*

16.    Accordingly, of the $805,000.00 due the Islanders under the Sponsorship Agreement in Base Sponsorship Fees, Havoc paid only $10,000.00, leaving $795,000.00 in unpaid Base Sponsorship Fees due the Islanders under the Sponsorship Agreement.

17.    As a result thereof, plaintiff was damaged in the sum of $795,000.00, plus pre-judgment interest at the rate of nine percent per annum from the date of the termination of the Sponsorship Agreement, June 13, 2007.

18.    The plaintiff accordingly requests judgment under its First for Claim for Relief, as a result of Havoc's breach of the Sponsorship Agreement, in the amount of the unpaid Base Sponsorship Fees due the Islanders under the Sponsorship Agreement, $795,000.00, plus pre-judgment interest at the rate of nine percent per annum from the date of the termination of the Sponsorship Agreement, June 13, 2007.

19.    To the extent that the Islanders' request for a default judgment in the amount of $795,000.00, plus pre-judgment interest at the rate set forth in the Sponsorship Agreement, is granted, the Islanders waive all other claims contained in the complaint, without prejudice.

WHEREFORE, the plaintiff, New York Islanders Hockey Club, L.P., requests that the default of the defendant be noted and that judgment be entered in favor of plaintiff and against defendant in the sum of $795,000.00, plus pre-judgment interest at the rate of nine per cent per annum from June 13, 2007.

On behalf of the plaintiff, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief; that the amount claimed is justly due and owing to plaintiff; that no part thereof has been paid; and, that the disbursements sought to be taxed have been made in this action, or will necessarily be made or included in this action.

JAIMIE WOLF

Sworn to before me the 5th
day of October, 2007

NOTARY PUBLIC

ROBERT V. GUIDO
Notary Public, State of New York
No. 4812187
Qualified in Suffolk County
Commission Expires March 30, 19
November 16, 2010

- 5 -

# EXHIBIT A

## SPONSORSHIP AGREEMENT COVER PAGE

### NEW YORK ISLANDERS HOCKEY CLUB, L.P. ("Team")
and
### SPORTS MEDIA, INC. o/b/o HAVOC DISTRIBUTION, INC. ("Sponsor")

Season—2006-2007, 2007-2008, 2008-2009
Date of Agreement: November 1, 2006

**TERM:** This Agreement shall, unless sooner terminated in accordance with the provisions set forth elsewhere in this Agreement, be effective on the date set forth above and shall terminate on June 30, 2009.

**ACQUIRED RIGHTS:** The Team grants to Sponsor, subject to the terms and conditions hereof, the Advertising and Sponsorship Rights specifically listed on **Exhibit 1** to this Agreement (the "Acquired Rights").

**SPONSOR FEE:** In consideration of becoming a sponsor and for the Acquired Rights that Sponsor shall acquire hereby, Sponsor agrees to pay Sponsor Fees as set forth on **Exhibit 2.**

**NOTICES:** The addresses for notices are as follows: .

| | |
|---|---|
| **To Sponsor:**<br>**Sports Media, Inc.**<br>520 Eighth Street<br>Silvis, IL 61282-1413<br>Attention: Dan Kosth | **With a copy to:**<br>**Havoc Distribution, Inc.**<br>2544 Tarpley Rd.<br>Suite 104<br>Carrolton, TX 75006<br>Attention: CK Williams |
| **To Team:**<br>**New York Islanders Hockey Club, L.P.**<br>1535 Old Country Road<br>Plainview, New York 11803<br>Attention: Sean Argaman | **With a copy to:**<br>**New York Islanders Hockey Club, L.P.**<br>1535 Old Country Road<br>Plainview, New York 11803<br>Attention: General Counsel |

**DESIGNATED PRODUCTS:** The Designated Products of Sponsor are its Energy Drinks.

**LOGO AND TRADEMARK RIGHTS:** This Agreement does not grant Sponsor the right to use the trademarks, tradenames or logos of Team in any manner inconsistent with this Agreement.

**TERMS AND CONDITIONS:** The Sponsorship Agreement Terms and Conditions attached here to form an integral part of this Agreement. To the extent that this Cover Page is inconsistent with the Terms and Conditions, this Cover Page shall govern for purposes of this Agreement.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their duly authorized representatives as of the date indicated as final above, and each of the individuals executing this Agreement certifies that he or she is duly authorized to do so.

| NEW YORK ISLANDERS HOCKEY CLUB, L.P. | Sports Media, Inc. o/b/o Havoc Distribution, LLC |
|---|---|
| By: _[signature]_<br>Roy E. Reichbach<br>General Counsel | By: _[signature]_<br>Print: Carey K. Williams<br>Title: CEO / President<br>Havoc Distribution Inc. |

# SPONSORSHIP AGREEMENT TERMS AND CONDITIONS

WHEREAS, Sponsor wishes to become a sponsor of the New York Islanders hockey team; and

WHEREAS, the Team is a party to a franchise agreement with the National Hockey League (the "NHL") pursuant to which the Team has been granted the right to own and operate a hockey team presently known as the New York Islanders (the "Islanders"); and

WHEREAS, the Team intends to play its home games at Nassau Veterans Memorial Coliseum in Uniondale, New York (such facility, or any facility located in Nassau, Suffolk or Queens Counties, New York, in which the Islanders regularly play their home games, together with its grounds and any additional or expanded space at any time added thereto, is referred to herein as the "Coliseum"), and

WHEREAS, the Team desires to grant the Acquired Rights described herein to Sponsor and Sponsor desires to acquire the Acquired Rights from the Team, all as hereinafter described in more detail, and for the consideration set forth herein; and

WHEREAS, Sponsor and Team desire to establish a mutually beneficial relationship to promote their interests.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, and intending to be legally bound, the parties agree as follows:

1.  **Definitions.** The following capitalized terms will have the meaning indicated:

"**Acquired Rights**" means such of the Advertising and Sponsorship Rights that Sponsor acquires pursuant to this Agreement.

"**Advertising and Sponsorship Rights**" means the rights that Team owns or controls and has the power to grant with respect to (a) the license to display the Advertising Copy of Sponsor, including, without limitation, on signs within and outside the Coliseum, billboards, message boards, scoreboards, announcements over television, public address systems and otherwise, and print media controlled by Team and (b) sponsorship of Sponsored Events.

"**Advertising Copy**" means any words, slogans, logos, designs, symbols, objects or comparable creative effort which Sponsor desires to include in or incorporate into any advertisement, script, presentation, announcement, video image or otherwise use in connection with the Acquired Rights.

"**Contract Year(s)**" means the period from July 1, 2006 through June 30, 2007, for the first Contract Year and, if this Agreement extends to any regular NHL season beyond the 2006-2007 NHL season, then the period from June 1 through the following July 30 for each subsequent Contract Year(s).

"**Designated Products**" means the products or services of the Sponsor which Sponsor is authorized to use the Acquired Rights to advertise and promote in accordance with the terms of this Agreement. Sponsor's "Designated Products" are set forth on the Cover Page.

"**Sponsor**" means the person or entity designated as such on the Cover Page.

"**Sponsored Event**" means a contest, sweepstakes, giveaway, event or other promotion, whether presented exclusively by Team, or by Team in conjunction with others, or by others without Team, in connection with which Sponsor shall be entitled as provided in this Agreement to promote its sponsorship of Team. Team reserves the right to establish reasonable standards and procedures for promotion of Sponsored Events. Sponsor shall be responsible for compliance in all respects with all applicable laws, rules and regulations in connection with any contest, sweepstakes, giveaway or similar promotion.

"**Sponsor Fee**" means the amounts which Sponsor has agreed to pay or the products or services that Sponsor has agreed to provide in trade for the Acquired Rights.

2.    **Term of Agreement**.

The Agreement shall terminate on the date set forth for such termination on the Cover Page, unless earlier terminated as set forth herein. In the event that Sponsor wishes to renew this Agreement for one or more additional Contract Years, Sponsor shall so advise Team at least 90 days prior to the scheduled date of termination.

3.    **Sponsorship Relationship**.

(a)    Sponsor agrees to become a sponsor of the Team for the term of this Agreement as stated on the Cover Page.

(b)    The Sponsor Fees shall be due and payable as set forth on **Exhibit 2**. The Sponsor Fees are absolutely net of all fees and commissions payable to third parties, if any, which shall be the sole responsibility of and paid by Sponsor. Sponsor shall be liable for all applicable federal, state or local taxes or charges, if any, levied, assessed or otherwise due with respect to the payments made by Sponsor hereunder, other than taxes or charges based solely on Team's net income.

(c)    Sponsor shall be solely responsible for all costs and expenses (i) incurred in conceiving, creating and producing the Advertising Copy that is used in any advertisements of Sponsor which are part of the Acquired Rights; (ii) incurred in the fabrication of the elements of the advertising in the Coliseum (the "Sign Faces"), if any, which are affixed to the signs, billboards and similar structures and which incorporate the Advertising Copy of the Sponsor; and (iii) incurred by or at the direction of Sponsor in respect of promoting the sponsorship of any Sponsored Event.

(d)    In the event that Sponsor fails to pay any installment of the Sponsor Fee when due, and without affecting any other rights of the Team hereunder, Sponsor agrees to pay interest to Team on the amount of such late payment at a rate of 18% per annum from the date that such installment was due to the date of payment.

4.    **Rights Granted**.

(a)    The Acquired Rights shall be further defined by, and shall be subject to, the terms and conditions of this Agreement and the terms of any specific agreement entered into by Team and Sponsor with respect to any of the Acquired Rights. Team reserves the right to establish reasonable rules and procedures from time to time for the use of the Acquired Rights, such rules and procedures to be consistent with the full use by Sponsor of the Acquired Rights. The Acquired Rights may only be used by Sponsor to promote and advertise the Designated Products and may not be used to promote or advertise any other products or services of Sponsor or any other person or entity, whether directly or by affiliation, cooperation, co-sponsorship, or any joint programs or promotions

(b)    Unless product category exclusivity is provided for on the Cover Page hereof, the Team reserves the right to sell other sponsorship rights to the remainder of the Coliseum to such other parties as it may choose.

5.    **Advertising Copy Approval; Advertising Preparation Costs**.

(a)    The design, layout and content of the Advertising Copy (as defined herein) to be utilized by Sponsor with respect to the Acquired Rights shall be subject to the approval of the Team, which approval shall not be unreasonably withheld or delayed. Team shall have the right to disapprove the Advertising Copy if, among other possible reasons for disapproval, it fails to comply with applicable NHL rules, regulations or policies or applicable government standards or regulations. Sponsor shall submit the Advertising Copy to the Team for approval at least thirty (30) days prior to the first use which Sponsor wishes to make of the Advertising Copy in connection with the Acquired Rights. The Advertising Copy shall be deemed approved if Sponsor shall not have received the Team's written specific objections thereto within fifteen (15) days following Team's receipt thereof.

(b)    Sponsor shall bear the full fabrication costs of its advertising material. Sponsor agrees, at its own expense, to repair, refurbish or replace all Sign Faces whenever, in the opinion of the Team, such

action becomes necessary to maintain a reasonably satisfactory level of appearance or to comply with any other requirements of this Agreement.

(c)    Subject to the right of the Team to approve the Advertising Copy, Sponsor shall have the right at any time to elect to change and/or remove the Advertising Copy at Sponsor's expense. Any change or removal of the Advertising Copy incorporated in Sign Faces shall be done only by Coliseum management personnel or other personnel authorized to perform such work, as shall be determined by the Team, but at the sole expense of Sponsor.

6.    **Trademarks and Logos and Promotion.**

(a)    The Sponsor trademarks, service marks, brand logos and label designs, product identification, decals and artwork displayed in the Advertising Copy, except for any logos or trademarks of Team used or incorporated therein, shall remain the property of Sponsor. Any and all ownership of and rights under trademark, service mark or copyright laws or intellectual or other property rights or laws with respect to any such items, Advertising Copy or other work product, shall inure solely to the benefit of Sponsor.

b)    Team shall have the right at all times during the term of this Agreement to disclose and publish the identity of Sponsor as a sponsor of Team.

(c)    Unless otherwise agreed or set forth on an Exhibit to this Agreement, neither party shall have the right to use in any way the corporate or trade name(s), trademark(s), service mark(s), logo(s) or other identifications of the other party or its affiliates without the other party's prior written consent. Any right granted to Sponsor to use the corporate or trade name(s), trademark(s), service mark(s), logo(s) or other identifications of Team shall be subject to the requirement that Sponsor obtain the prior approval of Team for any such use.

(d)    Sponsor agrees that neither it nor its affiliates will create or develop any trade names, trademarks, service marks, logos or other intellectual property that indicates or implies a connection, affiliation, endorsement, sponsorship or other relationship between Sponsor or any product or service of Sponsor and Team, without the written approval and consent of Team. In the event that Sponsor creates, develops, obtains or uses any such intellectual property, whether with the consent of Team or otherwise, Sponsor agrees that upon the termination of this Agreement, for any reason, Sponsor shall immediately cease to use any such intellectual property and shall cause all persons or entities having any right in such intellectual property to assign all of their right, title and interest therein to Team, or as Team directs, in consideration of the payment by Team of the total sum of $10. Sponsor agrees that this provision shall apply, notwithstanding any ownership, registration, license or other right which Sponsor or any other entity or person may have, apply for or obtain in such intellectual property.

(e)    Unless otherwise indicated on **Exhibit 1**, Sponsor has not acquired the right to run contests, sweepstakes, or promotions for the award of invitations, tickets or other rights acquired by Sponsor hereunder.

7.    **Indemnification.**

(a)    The Team will indemnify and hold Sponsor harmless from any and all claims of third parties, including, without limitation, all costs, liabilities, judgments, expenses, damages and reasonable attorneys' fees, arising out of or in connection with (i) any breach by the Team of any provision of this Agreement or any representation or warranty made by it herein; (ii) the authorized use of Team's trademarks, service marks, logos or other identifications of Team; (iii) any act or omission to act of the Team, its employees, servants and agents hereunder or in respect hereto; and (iv) any activities at any Sponsored Event which are exclusively controlled or directed by Team or anyone with whom Team has contracted to exclusively control or direct such activities.

(b)    Sponsor will indemnify and hold the Team and the owner and any manager of the Coliseum harmless from any and all claims of third parties, including, without limitation, all costs, liabilities, judgments, expenses, damages and reasonable attorneys' fees, arising out of or in connection with (i) any breach by Sponsor of any provision of this Agreement or any representation or warranty made by it herein; (ii) any act or

omission to act of Sponsor, its employees, servants and agents hereunder or in respect hereto; (iii) any Sponsored Event which is controlled or directed by Sponsor or anyone with whom Sponsor has contracted to exclusively control or direct such activities, excluding the actions or omissions of any Contest winner at any Sponsored Event or anyone not under the control or direction of Sponsor.

(c)       Sponsor will further indemnify and hold harmless the Team from and against any and all claims, damages, liabilities, costs and expenses, including reasonable attorneys' fees, arising out of (i) the use of the Sponsor trademarks, brand logos and label designs, product identification, decals and artwork displayed in the Advertising Copy, (ii) the character and content of the Advertising Copy, (iii) any infringement or alleged infringement by Sponsor or the Advertising Copy of the rights of any third party, and (iv) the lack or alleged lack of reasonable care exercised by Sponsor, its employees, agents or contractors in the fabrication of the Advertising Copy.

(d)       Each party shall give the other party proper notice of any claim or suit coming within the purview of these indemnities. The indemnitor will assume the defense of any claim, demand or action against such indemnitee and will, upon the request of the indemnitee, allow the indemnitee to participate in the defense thereof, such participation to be at the expense of the indemnitee. The indemnitee will in any case cooperate fully with the indemnitor in the defense and will, at indemnitor's expense, provide all relevant documents, witnesses and other assistance within its possession or control upon the reasonable request of the indemnitor. Settlement by the indemnitee without the indemnitor's prior written consent shall release the indemnitor from the indemnity as to the claim, demand or action so settled. Termination of this Agreement shall not affect the continuing obligations of each of the parties as indemnitors hereunder with respect to those acts, breaches, failures or omissions falling within the purview of the foregoing indemnities and which shall have occurred prior to such termination.

8.    **Insurance**.

(a)       The Team shall, at its own expense, maintain in effect throughout the term of this Agreement, comprehensive general liability insurance policies with carriers of recognized standing, with limits of liability of at least One Million Dollars ($1,000,000), covering any and all property damage and personal injury (including death) arising out of activities covered by this Agreement.

(b)       Sponsor shall, at its own expense, maintain in effect throughout the term of this Agreement, comprehensive general liability insurance policies with carriers of recognized standing, with limits of liability of at least One Million Dollars ($1,000,000), covering any and all property damage and personal injury (including death) arising out of activities of Sponsor covered by this Agreement.

9.    **Termination**.

(a)       In addition to any right of termination granted elsewhere in this Agreement, either party shall have the right at any time to terminate this Agreement, without prejudice to any other legal rights to which such terminating party may be entitled, upon the occurrence of any one or more of the following:

(i)       Default by the other party in performance of any of the provisions of this Agreement, which default is not cured within fifteen (15) days following receipt of written notice of such default by the defaulting party; provided, however, that such cure period shall be five (5) days following written notice in the case of any payment default;

(ii)       If any of the representations or warranties made by the other party in this Agreement shall prove to be untrue or incorrect in any material respect and is not cured, if capable of being cured, within fifteen (15) days following receipt of written notice thereof by the party making such representation or warranty; or

(iii)       The making by the other party of an assignment for the benefit of creditors, or the appointment of a trustee, receiver, liquidator or similar officer of any court for such party or for a substantial part of its property, whether with or without its consent, or the institution of bankruptcy, composition, reorganization,

insolvency or liquidation proceedings by or against the other party, which proceedings, if not voluntarily instituted by such other party, shall not be dismissed within sixty (60) days from the date of the institution thereof.

(b)    In the event that Sponsor terminates this Agreement pursuant to the provisions of (a) (i), (ii), or (iii) above, any unearned portion of the Sponsor Fee paid by Sponsor allocable to such year shall be promptly refunded to Sponsor by the Team within thirty (30) days of any such termination and Sponsor shall have the right to pursue any and all legal or equitable remedies that may be available to it for breach of contract or otherwise. The unearned portion for these purposes shall be estimated based on the portion of the Contract Year which has not elapsed as of the effective date of termination.

(c)    In the event that Team terminates this Agreement pursuant to the provisions of (a) (i), (ii) or (iii) above, Team shall have the right to retain all Sponsor Fees paid with respect to the Contract Year in which the effective date of termination occurs and, in addition thereto, to pursue any and all legal or equitable remedies that may be available to it for breach of contract or otherwise. Upon the expiration or any termination of this Agreement, the Team shall have the right to remove Sponsors Sign Faces and other advertising and promotional materials, if any, from the Coliseum without further notice to the Sponsor.

(d)    This Agreement may be terminated by the Team upon ten (10) days' prior written notice in the event that (i) the owner of the Coliseum or other party entitled to enter into such agreement enters into an agreement with a third party pursuant to which such third party is given the right to name the Coliseum (a "Naming Agreement") and (ii) the terms of the Naming Agreement preclude granting advertising or sponsorship rights to any product or service included within the Designated Products. In the event of such termination, the Team shall refund to the Sponsor within twenty (20) days following termination a pro-rated portion of the Sponsor Fee paid by Sponsor for the Contract Year in which the termination occurs, pro-rated as of the effective date of termination, and shall refund any Sponsor Fees theretofore paid for any future Contract Years. Upon such termination the Team shall, at its expense, remove any Sign Faces or other advertising or promotional material of Sponsor and make it available to Sponsor at the Coliseum for a reasonable period of time.

(e)    In the event that the Team moves into a facility other than the current Coliseum, Team shall endeavor to afford Sponsor the opportunity to acquire rights in such new facility similar to the Acquired Rights (the "New Rights"). The fees payable by Sponsor for the New Rights shall be agreed upon by Sponsor and Team, but Team shall not be obligated to offer the New Rights at the same price as the Sponsor Fee hereunder. In the event that Sponsor does not wish to acquire the New Rights, or if Team and Sponsor are unable to agree upon fees payable for the New Rights at least 90 days prior to the date of Team's move from the current Coliseum, Team may cancel this Agreement, without any further liability of either party to the other. Sponsor Fees for the Contract Year in which the termination occurs shall be pro-rated as of the effective date of termination, and an appropriate payment shall be made within 30 days following the effective date of termination.

10.    **Force Majeure**.

Any delay in or failure by either party in performance of this Agreement shall be excused if and to the extent such delay or failure is caused by occurrences beyond the control of the affected party including, but not limited to, decrees or restraints of government, acts of God, strikes or other labor disturbances, war or sabotage (each being a "Force Majeure Event"), provided that

(a)    When a Force Majeure Event occurs, the affected party shall promptly give written notice thereof to the other party, which notice shall include a description of the Force Majeure Event and the affected party's best estimate of the length of time such Force Majeure Event will delay or prevent performance of this Agreement; and

(b)    In the event that the Force Majeure Event is estimated to last, or in fact lasts, for more than 30 days, the other party shall have the option of terminating this Agreement. If Sponsor is the terminating party, it shall be promptly paid its unearned portion of the Sponsor Fee within thirty (30) days of termination.

11.    **Limitation on Assignment.**

(a)    This Agreement and all of the terms and provisions hereof will be binding upon, and will inure to the benefit of, the parties hereto and their respective successors and permitted assigns.

(b)    Team shall have the right to assign this Agreement to any purchaser of Team's interest in the NHL Islanders franchise and, upon approval by the NHL of the purchasers of the Islanders franchise, New York Islanders Hockey Club, L.P. shall be fully released from any liability hereunder; provided, however, that Sponsor shall have the option to terminate this Agreement in the event that the franchise is transferred outside of the New York metropolitan area.

(c)    Sponsor shall have no right to assign this Agreement, except in a transaction in which all or substantially all of its assets are acquired by the assignee.

12.    **Independent Contractor.**

The parties shall be and act as independent contractors, and under no circumstances shall this Agreement be construed as one of agency, partnership, joint venture or employment between the parties. The parties shall each be solely responsible for the conduct of their respective employees, agents and contractors in connection with the performance of their obligations hereunder.

13.    **Notices.**

All notices required or permitted hereunder shall be in writing and shall be deemed duly received after being hand delivered or received by facsimile transmission, or five (5) days after being sent by certified mail, postage fully prepaid, addressed to the appropriate address set forth on the Cover Page, or to such other person or address as either party may designate by notice to the other party given as herein provided.

14.    **Representations and Warranties.**

(a)    The Team represents, warrants and covenants to Sponsor as follows:

(i)    It has the full right and legal authority to enter into and fully perform this Agreement and to grant the rights granted herein in accordance with its terms.

(ii)    It has the exclusive right to grant the Acquired Rights to Sponsor, subject to the approval of the Coliseum owner or its assignee and the NHL, which Team will use its best efforts to obtain as soon as possible.

(iii)    This Agreement, when executed and delivered by the Team, will be its legal, valid and binding obligation, enforceable against the Team in accordance with its terms, except to the extent that enforcement thereof may be limited by bankruptcy, insolvency or other similar laws affecting creditors' rights generally.

(iv)    The execution and delivery of this Agreement has been duly authorized by the Team, and such execution and delivery and the performance by the Team of its obligations hereunder do not and will not violate or cause a breach of any other agreements or obligations to which it is a party or by which it is bound, and no approval or other action by any governmental authority or agency is required in connection herewith.

(v)    The Team acknowledges that each of such representations, warranties and covenants are deemed to be material and have been relied upon by Sponsor notwithstanding any investigation made by Sponsor.

(b)    Sponsor represents, warrants and covenants to the Team as follows:

(i)    It has the full right and legal authority to enter into and fully perform this Agreement in accordance with its terms.

(ii)    This Agreement, when executed and delivered by Sponsor, will be its legal, valid and binding obligation enforceable against Sponsor in accordance with its terms, except to the extent that enforcement thereof may be limited by bankruptcy, insolvency or other similar laws affecting creditors' rights generally.

(iii)    The execution and delivery of this Agreement has been duly authorized by Sponsor, and such execution and delivery and the performance by Sponsor of its obligations hereunder do not and will not violate or cause a breach of any other agreements or obligations to which it is a party or by which it is bound, and no approval or other action by any governmental authority or agency is required in connection herewith.

(iv)    Sponsor acknowledges that each of such representations, warranties and covenants are deemed to be material and have been relied upon by Team notwithstanding any investigation made by Team.

15.    **Compliance with the Law**.

Should it be determined by legal counsel to the Team that this Agreement or any provision hereof violates any federal, state or local law or regulation, or any provision of the NHL Constitution, Bylaws or rules or regulations, such legal counsel shall furnish Sponsor with a written notice regarding such determination and the parties shall then modify this Agreement to the extent reasonably necessary to bring about compliance with such law, rules, Constitution, Bylaws and/or regulations; provided, however, that if such modification would cause this Agreement to fail in its essential purpose or purposes, Sponsor shall have the option to terminate this Agreement and receive a refund of the unearned portion of the Sponsor Fee.

16.    **Failure to Object Not a Waiver**.

The failure of either party to object to, or to take affirmative action with respect to, any conduct of the other party which is in violation of any of the terms or provisions of this Agreement shall not be construed as a waiver thereof, of any future breach of any such terms or provisions or of any other wrongful conduct.

17.    **Confidentiality**.

Prior to and during the term of this Agreement, Team and Sponsor agree to keep confidential the material terms, provisions and agreements contained in this Agreement and each party agrees to keep confidential any information concerning the other party which is obtained by or given to it on a confidential basis, and shall not disclose the same to any other person or entity without the prior written consent of the other party except (a) when required by court order, process of law, governmental requirement, order, or regulation, or (b) as necessary to a party's accountants, attorneys, or similar advisors or to the NHL, or (c) to any existing or prospective lender in connection with financings or refinancings, or (d) as may be required or appropriate to comply with applicable securities or other similar laws which may require disclosures.

18.    **Governing Law**.

This Agreement will be deemed to have been executed and delivered in the State of New York and will be construed and interpreted according to the laws of that State. Team and Sponsor agree that the state courts and the United States federal courts that are located in the Counties of Nassau and Suffolk in the State of New York shall each have subject matter jurisdiction hereunder and personal jurisdiction over each of the parties hereto. Team and Sponsor hereby consent thereto and hereby waive any right they each may have to assert the doctrine of forum non conveniens or to object to venue to the extent that any proceeding is conducted in accordance with the foregoing provision.

19.    **NHL Constitution and Rules**

The parties hereto expressly agree that this Agreement is subject to the Constitution and Bylaws of the NHL, and the rules, regulations and resolutions of the NHL, and any modifications to any of such which may be

made from time to time during the term of this Agreement. Pursuant to the foregoing, and notwithstanding any contrary provision contained herein,

(i) if this Agreement is for a term exceeding three years, it may be terminated at the end of any season following the third Contract Year by unilateral action of the Team or by action of the NHL Board of Governors, and

(ii) if this Agreement covers any dasherboard advertising, such advertising may be preempted for any international event and any major national U.S. or Canadian commitment of the NHL.

(iii)    if this Agreement covers any dasherboard advertising, it may be preempted for any major television network contract.

20.    **Entire Agreement; Amendments**.

This Agreement constitutes the entire understanding and agreement between the parties with respect to the Acquired Rights and supersedes any and all prior negotiations, understandings or agreements in regard thereto, including any prior agreements. This Agreement may be amended only by written instrument signed by the parties hereto, specifically referring to this Agreement. The parties agree, however, that the terms of this Agreement are subject to the terms of any other definitive agreement referred to in Section 4 hereof, which Sponsor and Team may enter into with respect to specific Acquired Rights.

21.    **Section Captions**.

Section captions are inserted for convenience only and shall not be construed as part of this Agreement.

## EXHIBIT 1

## ACQUIRED RIGHTS

**A. Coliseum Signage**

    <u>On-Ice Logo</u> - One (1) approximately 16` x 5` television visible in-ice logo for each of Team's regular season home games played on and after November 27, 2006 during the First Contract Year and for each regular season home game during the Second and Third Contract Years. Sponsor shall receive the lower left location, as viewed from the television side.

**B. Advertising**

1. <u>Wall Mural</u> – Beginning on November 30, 2006, Sponsor shall receive signage covering an entire wall in one section within the arena which provides exposure during every event at Nassau Coliseum during each Contract Year. Location determined solely by Team.

2. <u>Print</u> – Beginning on November 30, 2006, Sponsor shall receive one (1) full page, four color advertisement in Team's game night program, *The Orange and Blue*, each Contract Year.

3. <u>In-Game Promotion</u>

    a. Sponsor shall be the sponsor of the "Most Energetic Fan" during twenty (20) of Team's regular season home games during each Contract Year. Dates determined by Team.

    b. Sponsor shall be the sponsor of the "Havoc Energy Meter" during each of Team's regular season home games played on and after November 6, 2006 of the First Contract Year and all regular season home games during the remaining Contract Years.

    c. One (1) :30 video commercial that shall be aired during between periods during each of Team's regular season home games played on or after November 6, 2006 of the First Contract Year and all regular season home games during the remaining Contract Years.

4. <u>Radio</u>

    a. Sponsor shall be the sponsor of the "Havoc Player of the Game" for all of Team's regular season home game radio broadcasts made on and after November 6, 2006 during the First Contract Year and all regular season home game radio broadcasts during the remaining Contract Years.

    b. Three (3) :10 drop-ins, one (1) per period, for all of Team's regular season home game radio broadcasts made on and after November 6,

2006 during the Contract Year and all regular season home games during the remaining Contract Years.

5. <u>Web</u>

Beginning on November 30, 2006, Sponsor shall be the sponsor of the Havoc "Islanders Player of the Game" that shall be featured on the Player Page of Team's website, www.newyorkislanders.com, during each Contract Year.

## C. **Merchandise**

1. Two (2) VIP hospitality nights with the use of a ten (10) seat Luxury Suite each Contract Year, which includes complimentary tickets to fill the suite and two (2) VIP parking passes. Food and beverage not included. Date to be mutually agreed upon, but each night will be during Team's regular season.

2. Four (4) full season tickets in the Lower VIP section for the regular season in each Contract Year, with the right to purchase these same seats at prevailing playoff prices for each Contract Year.

3. Ten (10) tickets to twenty (20) regular season games during each Contract Year for Sponsor's retail promotion. Promotion to be determined and must be approved by Team. Dates and locations to be determined solely by Team.

## D. **Sponsor Designation**

Sponsor shall have the right to represent to the public that they are the "Official Energy Drink of the New York Islanders." Sponsor shall be able to use Team logo on marketing materials and packaging. All materials must be approved by Team, prior to production.

## E. **Non-Display Periods**

Sponsor agrees and understands that during certain events not involving Team, due to contracts involving the Coliseum and one or more third parties, Sponsor's Sign Faces may be removed or covered. Sponsor shall not be liable for any associated costs of removal and replacement of Sign Faces.

## F. **Playoff Rights**

Sponsor shall be a participating playoff sponsor each Contract Year. Sponsor shall receive playoff rights are outlined in Exhibit 1, Sections A, B(1), (3)(a) -

(c), (4)(a)-(b) & (5) in exchange for playoff sponsorship fee outline on Exhibit 2.

## EXHIBIT 2

## SPONSOR FEES

The Sponsor Fee for the 2006 – 2007 and the 2007-2008 Contract Years shall be Two Hundred Sixty-Five Thousand Dollars ($265,000.00) net plus the cost of production per Contract Year and the Sponsor Fee for the 2008-2009 Contract Year shall be Two Hundred Seventy-Five Thousand Dollars ($275,000.00) net plus the cost of production. Payment schedule shall be as follows:

| | | | |
|---|---|---|---|
| February 5, 2007 | $90,000.00 | February 1, 2008 | $53,000.00 |
| March 5, 2007 | $90,000.00 | October 1, 2008 | $55,000.00 |
| April 5, 2007 | $85,000.00 | November 1, 2008 | $55,000.00 |
| October 1, 2007 | $53,000.00 | December 1, 2008 | $55,000.00 |
| November 1, 2007 | $53,000.00 | January 1, 2009 | $55,000.00 |
| December 1, 2007 | $53,000.00 | February 1, 2009 | $55,000.00 |
| January 1, 2008 | $53,000.00 | | |

Sponsor shall be a participating playoff sponsor for the NHL Playoffs. The sponsor fee is Five Thousand Dollars ($5,000) per home game played during each Contract Year. Payment for the first two (2) rounds, for a total of eight (8) games, will be due on March 31 each Contract Year. For Rounds 3 and 4, payment for two (2) playoff games shall be due prior to the first game of each playoff round. Payment for each additional game played at the Coliseum in any Playoff round shall be payable at the conclusion of each round.

In the event the Sponsor fails to make such payment, Team reserves the right to sell the inventory outlined in Exhibit 1. In the event the Team fails to qualify for the playoffs or the pre-paid amount is not entirely utilized, amounts paid will be refunded or credited towards the next year's sponsorship amount due. Unused portions of the playoff sponsor fee shall be refunded only at the written request of Sponsor, which must be received by Team no later than Team's final game of each season during the applicable Contract Year.

# EXHIBIT B

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

EASTERN _____    District of _____    NEW YORK

NEW YORK ISLANDERS HOCKEY CLUB, L.P.

**SUMMONS IN A CIVIL ACTION**

V.

HAVOC DISTRIBUTION, INC.

CASE NUMBER    CV 07    2720

BIANCO, J.

TO: (Name and address of Defendant)

HAVOC DISTRIBUTION, INC.
2544 TARPLEY ROAD, SUITE 104
CARROLTON, TEXAS 75006

WALL, M.J.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

GUARARRA & ZAITZ
100 PARK AVENUE, 20TH FLOOR
NEW YORK, NY 10017

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

ROBERT C. HEINEMANN

JUL 05 2008

_____    _____
CLERK                                DATE

*Elizabeth Hoddard*
(By) DEPUTY CLERK

✎AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                              Date                              *Signature of Server*


_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

CV 07    2720

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

NEW YORK ISLANDERS HOCKEY CLUB, L.P.,    BIANCO, J.

                               Plaintiff,    :    **COMPLAINT**

           -against-    :    Civil No.:    FILED

                               WALL, M.J.    IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

HAVOC DISTRIBUTION, INC.    ★ JUL 05 2007 ★

                         Defendant.    :    BROOKLYN OFFICE
-----------------------------------------------------------------x

New York Islanders Hockey Club, L.P., by its attorneys, Guararra & Zaitz, alleges as its

complaint as follows:

## PARTIES

     1.     Plaintiff New York Islanders Hockey Club, L.P. (the "Islanders") is a limited

partnership formed under the laws of the State of New York, whose principal place of business is

located at 1535 Old Country Road, Plainview, New York 11803.

     2.     Upon information and belief, defendant Havoc Distribution, Inc. ("Havoc") is a

corporation organized under the laws of the state of Texas with its principal place of business

located at 2544 Tarpley Road, Carrolton, Texas 75006.

## JURISDICTION AND VENUE

     3.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332, as this is an action between citizens of different states and the amount in controversy

exceeds $75,000.00, exclusive of interest and costs.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to the claims made in this action occurred in this District and because defendant Havoc consented in writing to venue in this District.

## FACTUAL ALLEGATIONS

5.     The Islanders own and operate a National Hockey League franchise whose team (the "Team") plays its home games at the Nassau Veterans Memorial Coliseum (the "Coliseum").

6.     Upon information and belief, Havoc is a distributor of among other things, energy drinks.

7.     On November 1, 2006 the Islanders and Havoc entered into an agreement (the "Sponsorship Agreement") pursuant to which the Islanders granted Havoc certain advertising and sponsorship rights, to promote itself and its energy drink (the "Acquired Rights").

8.     The term of the Sponsorship Agreement was November 1, 2006 through June 30, 2009 and covered each of the Team's three National Hockey League Seasons to take place during that period.

9.     The Acquired Rights included, but were not limited to:

o     the placement of Havoc's logo at center ice for the Team's home games at the Coliseum;

o     signage space at the Coliseum;

o     advertising space in the Team's program sold at the Team's home games;

o     live and pre-recorded in-game promotion of Havoc, and its energy drink, during the Team's home games via the Coliseum message boards and public address system;

- 2 -

    o    radio advertising time during the radio broadcasts of the Team's games;

    o    the right to place advertising copy on the Team's official web-site;

    o    the right to represent to the public that Havoc's energy drink is the "Official Energy Drink of the New York Islanders" and the right to use the Team's logo on certain of Havoc's marketing material and packaging, subject to the prior approval of the Islanders.

10.    Pursuant to the Sponsorship Agreement, in consideration for the granting of the Acquired Rights to Havoc by the Islanders for the term of the Sponsorship Agreement, Havoc agreed to pay $805,000.00 to the Islanders ("Base Sponsorship Fees"), plus an additional $5,000.00 for each home playoff game to be played by the Team during the term of the Sponsorship Agreement, plus any costs incurred by the Islanders in their producing advertising copy used by Havoc in connection with the Sponsorship Agreement.

11.    The Base Sponsorship Fees were due to be paid by Havoc to the Islanders, as set forth in the Sponsorship Agreement, as follows:

| | |
|---|---|
| February 5, 2007 | $90,000.00 |
| March 5, 2007 | $90,000.00 |
| April 5, 2007 | $85,000.00 |
| October 1, 2007 | $53,000.00 |
| November 1, 2007 | $53,000.00 |
| December 1, 2007 | $53,000.00 |
| January 1, 2008 | $53,000.00 |
| February 1, 2008 | $53,000.00 |
| October 1, 2008 | $55,000.00 |
| November 1, 2008 | $55,000.00 |
| December 1, 2008 | $55,000.00 |
| January 1, 2009 | $55,000.00 |
| February 1, 2009 | $55,000.00 |

- 3 -

12.    In accordance with their obligations under the Sponsorship Agreement, the Islanders, throughout the Team's 2006-2007 regular season, afforded Havoc substantially all of Havoc's Acquired Rights under the Sponsorship Agreement by, among other things:

- placing Havoc's logo at center ice for all of the Team's home games;

- allotting Havoc the requisite signage space at the Coliseum;

- allotting Havoc the requisite advertising space in the Team's program;

- allotting Havoc the requisite live in-game promotion;

- allotting Havoc the requisite radio advertising time during the radio broadcasts of the Team's games;

- permitting Havoc to represent to the public that Havoc's energy drink is the "Official Energy Drink of the New York Islanders" and permitting it to use the Team's logo on those containers of Havoc's energy drink that were sold at the Team's home games.

13.    The Islanders were unable to provide Havoc with certain pre-recorded in-game promotion on the Coliseum Jumbotron and certain promotion on the Team's official web-site because Havoc failed to provide any advertising copy to the Islanders for these media.

14.    At no time did Havoc notify the Islanders that as a result of such inability that the Islanders were not in compliance with the Sponsorship Agreement.

15.    Havoc did, however, notify the islanders that Havoc did not desire the merchandise specified in Section C of Exhibit 1 of the Sponsorship Agreement and, accordingly, the Islanders did not send such merchandise to Havoc.

16.    In addition to the Acquired Rights, the Islanders conferred upon Havoc additional live in-game promotion, not set forth in the Sponsorship Agreement, such as the creation of a

"Havoc Zone" at the Coliseum during the Team's home games during the 2006-2007 season and by spotlighting the "Havoc Zone" during those games.

17.    The Islanders, in affording Havoc the Acquired Rights, also incurred production costs in the amount of $4,147.69.

18.    Other than an initial payment by Havoc to the Islanders in the amount of $10,000.00, made in February 2007, Havoc failed to make any payments to the Islanders as required by the Sponsorship Agreement.

19.    In accordance with the Sponsorship Agreement, by letter dated April 24, 2007, of Jaimie Wolf, Assistant General Counsel for the Islanders, sent via certified mail to Havoc and to Sports Media, Inc, as is required by the Sponsorship Agreement, the Islanders demanded that Havoc make all payments due the Islanders under the Sponsorship Agreement within five days of the date that letter and notified Havoc that if it failed to do so, among other things, the Sponsorship Agreement would be terminated.

20.    The Sponsorship Agreement provided also that in the event that Havoc failed to make any payment required thereunder, the Islanders had the right to terminate the Sponsorship Agreement, if, after five days from the Islanders sending written notice to Havoc of such failure to pay, and demanding same, Havoc still failed to make such payment.

21.    Havoc failed to make any payments to the Islanders subsequent to that letter.

22.    The Islanders terminated the Sponsorship Agreement by letter of counsel dated June 13, 2007, sent via certified mail to Havoc and to Sports Media, Inc.

23.    Islanders also notified Havoc, by that same letter of June 13, 2007, that any rights that Havoc may have had under the Sponsorship Agreement were also accordingly terminated.

24.    This notwithstanding, there currently exists, on Havoc's website, located at

- 5 -

http://www.havocenergy.com, a hyperlink to an internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders."

25.    Pursuant to the Sponsorship Agreement, each of the parties consented to the jurisdiction of the state and federal courts located in Nassau and Suffolk counties in New York.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

26.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 as if each were more fully set forth herein.

27.    The Sponsorship Agreement is a valid and binding contract between Havoc and the Islanders.

28.    Havoc's failure to pay the Base Sponsorship Fees required by the Sponsorship Agreement, despite due demand by the Islanders to Havoc for it to do so, constitutes a breach of the Sponsorship Agreement by Havoc.

29.    Havoc has also failed to pay the production costs incurred by the Islanders pursuant to the Sponsorship Agreement in the amount of $4,147.69, which failure also constitutes a breach of the Sponsorship Agreement by Havoc.

30.    Havoc's failure to remove the hyperlink on Havoc's website, located at http://www.havocenergy.com, to the internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders" also constitutes a breach of the Sponsorship Agreement.

31.    The Islanders have been damaged as a result of such breaches.

32.    The Islanders accordingly demand judgment as a result of such breach in an amount to be determined at trial, but which amount includes, at least, all the unpaid Base Sponsorship Fees required by the Sponsorship Agreement, $795,000.00, plus the production costs incurred by the Islanders pursuant to the Sponsorship Agreement, $4,147.69, which amounts total, $799,147.69, plus pre-judgment interest at the rate set forth in the Sponsorship Agreement, and reasonable attorneys' fees.

33.    The Islanders also demand judgment declaring that all of Havoc's rights under the Sponsorship Agreement are terminated.

34.    The Islanders also demand judgment directing Havoc to remove the hyperlink on Havoc's website, located at http://www.havocenergy.com, to the internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders" and permanently enjoining it from utilizing any intellectual property of the Islanders that would have been within the scope of the Acquired Rights had the Sponsorship Agreement not been terminated.


## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

35.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if each were more fully set forth herein.

36.    Havoc was afforded all of the Acquired Rights under the Sponsorship Agreement by the Islanders.

37.    Havoc accordingly had a benefit conferred upon it by the Islanders.

38.    Havoc failed to fully pay the Islanders for such benefit.

39.    Havoc has been unjustly enriched as a result.

40.    The Islanders accordingly demand judgment in an amount to be determined at trial sufficient to compensate the Islanders for such conferred benefit, plus pre-judgment interest and reasonable attorneys' fees.


WHEREFORE, Plaintiff demands judgment against the defendant as follows:

1)    on the First Claim for Relief:

    a)    in an amount to be determined at trial, but which amount is at least $799,147.69, plus prejudgment interest at the rate set forth in the Sponsorship Agreement, and reasonable attorneys' fees;

    b)    a declaration that Havoc's rights under the Sponsorship Agreement are terminated;

    c)    directing Havoc to remove the hyperlink on Havoc's website, located at http://www.havocenergy.com, to the internet press release entitled "Havoc Harnessed by the Islanders" wherein Havoc is referred to as the "exclusive energy drink sponsor of the New York Islanders" and permanently enjoining it from utilizing any intellectual property of the Islanders that would have been within the scope of the Acquired Rights had the Sponsorship Agreement not been terminated;


2)    on the Second Claim for Relief, in an amount to be determined at trial, plus prejudgment interest and reasonable attorneys' fees;


3)    and for such other and further relief as this Court deems proper, including costs and disbursements.

- 8 -

Dated:  New York, NY
       June 27, 2007

Respectfully submitted,

GUARARRA & ZAITZ

by: Michael M. Zaitz (MZ3646)
100 Park Avenue, 20th Floor
New York, New York 10017
(212) 696-9193
Attorneys for Plaintiff
NEW YORK ISLANDERS
HOCKEY CLUB, L.P.

**EXHIBIT C**

UNITED STATES DISTRICT COURT/EASTERN DISTRICT OF NEW YORK    Attorney: GUARARRA & ZAITZ - 1578

COUNTY OF NEW YORK

NEW YORK ISLANDERS HOCKEY CLUB L.P.

Plaintiff(s)

Index # CV 07 2720

Date Filed:

- against -

HAVOC DISTRIBUTION, INC.

Defendant(s)    **AFFIDAVIT OF SERVICE**

STATE OF Texas            : COUNTY OF Palo Pinto        ss:

Ronny Allen        BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS
ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES AT State of Texas. ON 07/09/07 AT 3:10 AM/PM
AT 2544 Tarpley, Ste 104, Carrolloton, Tx.

DEPONENT SERVED THE WITHIN SUMMONS & COMPLAINT
ON: HAVOC DISTRIBUTION, INC. ,THE DEFENDANT/RESPONDENT THEREIN NAMED.

**#1 INDIVIDUAL**    By delivering a true copy of each to said defendant/respondent personally; deponent knew the person so served to be
☐    the person described as the defendant/respondent therein.

**#2 CORPORATION**    A _____ corporation, delivering thereat a true copy of each to CK Williams personally,
☒    deponent knew said corporation so serviced to be the corporation, described in same as said defendant/respondent
     and knew said individual to be CEO thereof.

**#3 SUITABLE**    By delivering a true copy of each to _____ a person of suitable age and discretion. Said premises is the
**AGE PERSON**    defendant's/respondent's [ ] actual place of business    [ ] dwelling house / usual place of abode within the state.
☐

**#4 AFFIXING**    By affixing a true copy of each to the door of said premises, which is the defendant's/respondent's [ ] actual place of
**TO DOOR**    business    [ ] dwelling house /usual place of abode within the state.
☐

**#5 MAILING**    On _____, deponent completed service under the last two sections by depositing a copy of the
**COPY**    SUMMONS & COMPLAINT to the above address in a First Class postpaid properly addressed envelope marked
☐    "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post
     Office in the State of _____.

     Deponent was unable, with due diligence to find the defendant/respondent or a person of suitable age and discretion,
     having called thereat

     on the _____ day of _____ at _____
     on the _____ day of _____ at _____
     on the _____ day of _____ at _____
     on the _____ day of _____ at _____

**#6 NON-SERVICE**    After due search, careful inquiry and diligent attempts, I have been unable to effect process upon the
☐    defendant/respondent being served because of the following: [ ] party unknown at address    [ ] Evading
     [ ] Moved left no forwarding  [ ] Address does not exist  [ ] No one ever in or available to accept service

**#7 DESCRIPTION**    A description of the defendant/respondent , or other person served, or spoken to on behalf of the
☒    defendant/respondent is as follows:

Description is required
if #1,#2 or #3 above is    Sex Male Skin Color wht    Hair Color brn    Age (Approx.) 35    Height (Approx.) 6 ' 4 " Weight (Approx)
Selected                                                                                                         190

            Other:

**# 8 WIT. FEES**    $ _____ the authorizing traveling expenses and one day's witness fee was paid (tendered) to the
☐    witness/recipient.

**# 9 MILITARY**    Deponent asked person spoken to whether the defendant/respondent was in the military service of the United States
**SERVICE**    Government or on active duty in the military service in the State of _____ and was informed the
☐    defendant/respondent was not.

WAYNE RATCLIFFE
Notary Public
STATE OF TEXAS
My Commission
Expires 02/17/2010

Sworn to before me on this  13th  day of  July  2007        Server signature: Ronny Allen

Notary Public    Wayne Ratcliffe            Docket #: 489717        Ronny Allen
                                                                    SC125

# EXHIBIT D



April 24, 2007

**By certified mail**
Havoc Distribution, Inc.
2544 Tarpley Road
Suite 104
Carrolton TX 75006
Attention: CK Williams

Dear Mr. Williams:

As you are aware, you are in default under the terms of the November 1, 2006 Sponsorship Agreement by and between Sports Media, Inc. o/b/o Havoc Distribution, Inc. and New York Islanders Hockey Club, L.P. (the "Islanders") (the "Agreement"), a copy of which is attached for your convenience. Specifically, with the exception of a $10,000 payment we received in February 2007, you have failed to make any payments in accordance with the schedule of payments set forth in Exhibit 2 of the Agreement. Notwithstanding your failure to make

The Islanders – specifically Sean Argaman, Sr. Director of Sales – have repeatedly reached out to you to request payment in accordance with the Agreement, but, as of the writing of this letter, have not received any payment or significant assurance that payment would soon be made. Notwithstanding this fact that the Islanders have not received all payments it is entitled to under the Agreement, the Islanders have honored its obligations under the Agreement by providing you with the sponsorship elements you agreed to purchase.

We now must demand, in accordance with Section 9(a)(i) of the Agreement, that full payment be made within five (5) days after receipt of this letter. Payment should be sent to Sean Argaman's attention at the address listed below. Failure to do so will result in the termination of this Agreement and the Islanders will take all necessary steps to protect its interests, including, but not limited to, filing suit to collect all amounts owed to the Islanders under the Agreement and to ensure that the Islanders logo is not used on any of your products. Should you have any questions, please contact me at (516) 501-6866.

Sincerely,

Jaimie Ron Wolf
Assistant General Counsel

Cc:    Sports Media, Inc.
       520 Eighth Street
       Silvis, IL 61282-1413
       Attention: Dan Kosth

# EXHIBIT E

GUARARRA & ZAITZ
100 PARK AVENUE
20TH FLOOR
NEW YORK, NY 10017
TEL (212) 696-9190
FAX (212) 681-9189

**GUARARRA & ZAITZ**
ATTORNEYS AT LAW

Michael Zaitz
Direct Dial (212) 696-9193
E-Mail: mzaitz@gzmlaw.com
Web: www.gzmlaw.com

June 13, 2007

**VIA CERTIFIED MAIL**
Sports Media, Inc.                    Havoc Distribution, Inc.
520 Eighth Street                     2544 Tarpley Rd., Suite 104
Silvis, IL 61282-1413                 Carrolton, TX 75006
Attn: Dan Kosth                       Attn: CK Williams

Dear Sirs:

This firm represents the New York Islanders Hockey Club, L.P. (the "Islanders") in connection with the November 1, 2006 Sponsorship Agreement between Havoc Distribution LLC ("Havoc") and the Islanders (the "Agreement").

By letter dated April 24, 2007 of the Islanders' Assistant General Counsel, Jaimie Wolf, the Islanders made formal demand upon Havoc, pursuant to Section 9(a)(i) of the Agreement, to make payment to the Islanders in the amounts required by the Agreement. To date, Havoc has failed to make such payment. The Islanders accordingly hereby terminate the Agreement pursuant to Section 9(a)(i) thereof. Any rights that Havoc may have had under the Agreement are also accordingly terminated. Such termination does not, however, relieve Havoc from its payment obligations under the Agreement. Please be advised that the Islanders intend to enforce in court their right to receive such payment and, in addition, to seek all other available remedies.

Please be advised also, pursuant to section 6(d) of the Agreement, that upon its termination, whatever rights Havoc may have had under the Agreement to use the intellectual property of the Islanders is terminated. Any continued use by Havoc of the marks, logos, or other intellectual property of the Islanders, which use would be unauthorized, could accordingly constitute, among other things, a violation by Havoc of the Islanders' statutory and common law trademark and trade name rights. The Islanders accordingly demand that Havoc immediately cease and desist in any of its uses of any intellectual property of the Islanders and that Havoc provide the Islanders written proof, satisfactory to the Islanders, within five days of the date of this letter, that Havoc has ceased any such uses made by Havoc prior to the termination of the Agreement. The Islanders reserve all of their rights and remedies under statutory and common law in this regard.

Page 2 of 2
June 13, 2007

Sincerely,

Michael Zaitz

cc:    Jaimie Wolf, Esq.

# AFFIRMATION OF
# OF MICHAEL ZAITZ

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
:
NEW YORK ISLANDERS HOCKEY CLUB, L.P.                       :
:
                                       Plaintiff,      :     **AFFIRMATION IN SUPPORT**
:     **OF DEFAULT JUDGMENT**
:
            -against-                                      :     Civil No.: CV-07-2720 (JFB)WDW
:
:
HAVOC DISTRIBUTION, INC.                                   :
:
                              Defendant.      :
-------------------------------------------------------------------x

STATE OF NEW YORK      )
                          ) ss.:
COUNTY OF NEW YORK  )

        MICHAEL ZAITZ, being duly sworn, deposes and says:

        1.     I am a member of Guararra & Zaitz, attorneys for the plaintiff in the above-entitled action.  I am an attorney duly licensed to practice law in the State of new York and am admitted to practice before this Court.  I make this affidavit based upon my personal knowledge of the proceedings had in the above-entitled action.

        1.     The above-entitled action was brought by the Islanders against the defendant Havoc Distribution, Inc. ("Havoc") to recover amounts due the Islanders from Havoc under a Sponsorship Agreement dated November 1, 2006.   *A copy of the Sponsorship Agreement is annexed as Exhibit A to the Affidavit of Jaimie Wolf, Assistant General Counsel for plaintiff.*

        2.     The defendant is a corporation organized under the laws of the state of Texas whose principal place of business is located at 2544 Tarpley Road, Carrolton, Texas 75006; accordingly defendant is not an infant or an incompetent nor is it presently in the military service of the United States.

3.      The above-entitled action was commenced by the filing with the court of a summons and complaint in this action on July 5, 2007. *A copy of the summons and complaint is annexed as Exhibit B to the Affidavit of Jaimie Wolf, Assistant General Counsel for plaintiff.*

4.      Service of the summons and complaint in this action was made on the defendant Havoc by the delivery of a true copy of the summons and complaint to its Chief Executive Officer, CK Williams, personally, on July 9, 2007. *A copy of the affidavit of service of the summons and complaint is annexed as Exhibit C to the Affidavit of Jaimie Wolf, Assistant General Counsel for plaintiff.*

5.      Exhibit E to the affidavit of Jaimie Wolf is a true copy of a letter sent by my office, via certified mail, to defendant in this action on June 13, 2007.

6.      The time for the defendant Havoc to answer or move with respect to the complaint was not extended, has now expired, and the defendant Havoc has not answered or moved with respect to the complaint.

7.      The defendant is indebted to the plaintiff in the manner set forth in the Affidavit of Jaimie Wolf, Assistant General Counsel for plaintiff.

WHEREFORE, declarant, requests that the default of the defendant be noted and that judgment be entered in favor of plaintiff and against defendant in the sum of $795,000.00, plus pre-judgment interest at the rate of nine per cent per annum from June 13, 2007.

MICHAEL ZAITZ

Dated:  October 4, 2007
New York, New York

- 2 -